Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AUG 23 2023

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>REILY WILLIAM ARAMBUL,<br><br>  Defendant. | Case No.: 2:23-CR-00066-MKD-1<br><br>Plea Agreement |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Reily William Arambul ("Defendant"), both individually and by and through Defendant's counsel, Deputy Federal Defender Ryan Farrell, agree to the following Plea Agreement.

1. <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to sole count of the Indictment filed on June 6, 2023, which charges Defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), a Class C felony.

Defendant understands that the following potential penalties apply:

  a.   a term of imprisonment of not more than 15 years;

  b.   a term of supervised release of not more than 3 years;

PLEA AGREEMENT - 1

      c.    a fine of up to $250,000;

      d.    forfeiture; and

      e.    a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

      a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

      b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

      c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

      a.    sentencing is a matter solely within the discretion of the Court;

      b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

  c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

  d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

  e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

  f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

  a. pleading guilty in this case may have immigration consequences;

  b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

  c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

  d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

PLEA AGREEMENT - 3

5. <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), the United States would have to prove the following beyond a reasonable doubt.

    a.    *First*, between on or about May 9, 2023, and May 10, 2023, within the Eastern District of Washington, Defendant knowingly possessed a firearm, to wit: a Hi-Point, Model CF380, .380 caliber, semi-automatic pistol, bearing serial number P8175268;

    b.    *Second*, the firearm had been shipped or transported in interstate or foreign commerce;

PLEA AGREEMENT - 4

  c.  *Third*, at the time Defendant possessed the firearm, defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

  d.  *Fourth*, at the time Defendant possessed the firearm, Defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

7. <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

At approximately 4:00a.m., on May 10, 2023, officers with the Spokane Police Department ("SPD") responded to a person with weapon call at 320 W 5th Ave #1, Spokane, Washington, in the Eastern District of Washington. The reporting party, J.H., called 911 to report a male, later identified as Defendant, Reily William Arambul, was outside brandishing a gun. J.H. described the male as a white male with tattoos on his face, about 5 foot 8 inches tall, and wearing a black leather jacket and a black baseball hat. Upon arriving at the scene, Defendant was observed entering a silver/grey truck as a passenger and fleeing the location. Prior to eluding the officers, responding officers made contact with the truck occupants and ordered them to show their hands, which the driver, later identified as B.M., did. The officers noted B.M. appeared to be in a state of shock, based upon the look on his face and appearance that he was arguing with Defendant, who was still in the passenger seat. The officers noted that Defendant

PLEA AGREEMENT - 5

refused to listen to commands, did not show his hands, and continued to reach down on the floorboard under the driver's side seat. The officers heard the engine start up and go into gear. The officers observed the truck lurch forward a couple of times. B.M. during all of this had his hands in the air, with ARAMBUL in control of the truck. The officers saw the truck flee west bound on 5th Avenue, lurching, and lunging. Eventually the vehicle came to a stop and was boxed in by responding officers.

B.M. refused to elude the police, which resulted in Defendant fleeing on foot. After exiting the truck, Defendant ran from the pursuing SPD officers. Upon being taken into custody, Corporal Johnson advised other responding officers Defendant's firearm was lying in the grass next to him. The responding officers observed a black and silver pistol in the grass on the east side of S. Browne St. A loaded magazine was also located in the grass. This magazine was loaded with two .380 rounds and was consistent with a magazine for the firearm further described below. The firearm is more completely described as a silver and black Hi-Point, Model CF380, .380 caliber, semi-automatic pistol, bearing serial number P8175268. The pistol was found with a single round in the chamber and no magazine. As more officers arrived on scene, they observed the suspect on the ground and placed him in handcuffs. Defendant was checked for wounds and indicated he was not hit. ·

A search of Defendant's person revealed two knives, a black leather holster. Also located on Defendant was his wallet, a phone, a bag of syringes, a vape pen, a small red silicone case, and a small red bag with "Trader Joes" on it. Defendant told the officers that the bag had approximately 60 fentanyl pills in it. Defendant identified himself as Reily W. Arambul. SPD dispatch advised Defendant had a felony warrant out of Texas, which was confirmed.

The responding officers conducted a canvass of the area and located two .380 bullets in rocks near where the pistol was found.

PLEA AGREEMENT - 6

Defendant was transferred to the Spokane County Sheriff's Office. While there, Defendant was advised of his *Miranda* warnings, which he waived. In a recorded interview, Defendant stated that he only knew B.M. for about eight hours. Defendant stated he asked B.M. for a ride to W. 5th Avenue. When they arrived, he exited the truck and went to the apartment complex. When he observed police vehicles approaching, he ran back to the truck because he had a warrant. He told B.M. to drive away, eventually taking control of the truck from the passenger side, placing the truck in reverse, and leaning over the center console using his hand to depress the accelerator. He and B.M. drove a short distance before B.M. applied the brakes and told Defendant to get out. Defendant further stated he had a firearm on him at the time he was detained by the police, and he knew it was a firearm because he had test fired it a few days prior in the woods. Defendant further stated additional personal items are still in the truck.

A subsequent interview of B.M. revealed that B.M. met Defendant at a friend's house during the evening of May 9, 2023. While at the friend's house, Defendant asked B.M. to give him a ride. B.M. was aware Defendant possessed a black and silver handgun in a holster on the side of his waist. B.M. drove Defendant to the area of W. 5th Avenue. B.M. waited in his truck while Defendant walked towards the apartment building. After a period of time, Defendant returned to B.M.'s truck and yelled at B.M. to "go, go, go" and "give it some f****** gas." B.M. further stated at one point, Defendant reached over and pushed on the accelerator to get away from the police that were arriving.

A review of Defendant's criminal history shows he has multiple prior felony convictions. Defendant stipulates at the time of his possession of the firearm, he was a previously convicted felon and knew he had previously been convicted of a felony.

Defendant stipulates the firearm he possessed travelled in interstate commerce, having been found in the State of Washington.

PLEA AGREEMENT - 7

8.   The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.   United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.   Base Offense Level

The United States and the Defendant agree that the base offense level for Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), due to Defendant having one prior controlled substance conviction is 20. U.S.S.G. § 2K2.1(a)(4).

b.   Specific Offense Characteristics

The United States intends to argue Defendant's base offense level should be increased by an additional four (4) levels because he possessed the firearm in connection with another felony offense. U.S.S.G. § 2K2.1(b)(4)(B).

Defendant reserves the right to argue against the application of any specific offense characteristic.

c.   Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

　　　　i.   accepts this Plea Agreement;

PLEA AGREEMENT - 8

    ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv. provides complete and accurate information during the sentencing process; and

    v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

   d. <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

   e. <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

PLEA AGREEMENT - 9

10. <u>Incarceration</u>

The United States agrees to recommend a sentence no higher than the low end of the Guidelines, as calculated by the United States. The United States calculates the low-end of the Guideline at 70 months.

Defendant may recommend any legal sentence.

11. <u>Supervised Release</u>

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

PLEA AGREEMENT - 10

12. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. <u>Judicial Forfeiture</u>

Defendant agrees to voluntarily forfeit any and all right, title and interest he has in the following listed assets in favor of the United States, including, but not limited to:

- a Hi-Point, Model CF380, .380 caliber, semi-automatic pistol, bearing serial number P8175268

Defendant acknowledges that the firearm covered by this agreement is subject to forfeiture as property facilitating or involved in illegal conduct in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8), Felon in Possession of a Firearm, as charged in the Indictment, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

The Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding.

The Defendant agrees to hold all law enforcement and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and forfeiture of any asset(s) covered by this agreement. Defendant consents to the forfeiture and disposal of assets without further notice.

The Defendant further agrees to waive all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any

PLEA AGREEMENT - 11

other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

14. <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine or term of supervised release order imposed by the Court.

PLEA AGREEMENT - 12

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18.    <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

   a.   this Plea Agreement shall become null and void;
   b.   the United States may prosecute Defendant on all available charges;
   c.   The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and
   d.   the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or

PLEA AGREEMENT - 13

dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____          8-23-20 23
Patrick J. Cashman                   Date
Assistant United States Attorney

PLEA AGREEMENT - 14

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     08/23/2023
Reily William Arambul                  Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     8/23/2023
Ryan Farrell                           Date
Attorney for Defendant

PLEA AGREEMENT - 15