

Ryan Farrell, *Trial Attorney*
ID 11832 / WA 58863
601 West Riverside Avenue, Suite 900
Spokane, Washington 99201
509.624.7606
Attorney for Reily William Arambul

# United States District Court
## Eastern District of Washington

| | |
|---|---|
| **United States,** | No. 2:23-CR-66-MKD |
| Plaintiff, | **Supplemental Sentencing Memorandum** |
| v. | |
| **Reily William Arambul,** | |
| Defendant. | |

## I. Introduction

Reily Arambul stands by his request in his sentencing memorandum: a sentence of 60 months imprisonment followed by three years of supervised release, with judicial recommendations to the Bureau of Prisons (BOP). His recent jail infractions reinforce the fact that he needs to be appropriately stabilized on medication, to receive additional treatment in custody, and to be removed from the toxic prison environment as soon as possible so he doesn't destabilize. At the moment, he is *not* stabilized and is *not* receiving treatment. That should change when he enters BOP custody.

This memo addresses what comes after BOP custody—Mr. Arambul's reintegration into society. Mr. Arambul proposes additional conditions of supervised release to ensure his continued stability and participation in treatment after his release from custody.

## II. Discussion

One key to a successful, stable transition to supervised release is immediate access to resources. The most important resources for Mr. Arambul are stable housing, employment, and mental health and substance abuse evaluations and treatment. The other key is for him to stay on his prescribed medication. In light of his mental health history, this factor has the potential to implicate an important liberty interest: his right to "avoid[] the unwanted administration of antipsychotic drugs," which can have serious (even fatal) side effects. *Washington v. Harper*, 494 U.S. 210, 221 (1990). After

all, it's reasonable to think that antipsychotic drugs may be appropriate for a time, based on his history. The problem is that we just don't know what his medical needs will be five years from now.

Mr. Arambul proposes the following package of supervised release conditions addressing both keys to successful reintegration:

1) You must reside in a residential reentry center (RRC) for a period up to 180 days at the direction of the supervising officer. Your participation in the programs offered by the RRC is limited to employment, education, treatment, and religious services at the direction of the supervising officer. You must abide by the rules and requirements of the facility.

2) Within 72 hours of release from imprisonment, you must contact the supervising officer or the Federal Defenders of Eastern Washington to schedule a mental health evaluation. The evaluation must comply with the requirements of *U.S. v. Williams*, 356 F.3d 1045 (9th Cir. 2004), as amended by any later statutory or case law. You must complete that evaluation and follow any treatment recommendations of the evaluating professional which do not require forced medication or inpatient treatment, absent further order of the court. You also are not required to follow any treatment recommendations that require taking an antipsychotic or psychotropic medication that you are not already prescribed, absent further order of the court. You must allow reciprocal release of information between the supervising officer and treatment provider. You must contribute to the cost of treatment according to your ability to pay.[1]

3) Within 72 hours of release from imprisonment, you must contact the supervising officer or the Federal Defenders of Eastern Washington to schedule a substance abuse evaluation. You must complete that evaluation and, if indicated by a licensed/certified treatment provider, enter into and successfully complete an approved substance abuse treatment program, which could include inpatient treatment and aftercare upon further order of the court. You must contribute to the cost of treatment according to your

---

[1] This is a modified version of suggested special condition #2. *See* ECF 50 at 37 (3d Amended PSR).

ability to pay. You must allow full reciprocal disclosure between the supervising officer and treatment provider.[2]

4) Within 72 hours of release from imprisonment, you must contact the Federal Defenders of Eastern Washington to schedule an appointment with their staff social worker. This appointment must address available housing and employment resources. You must attend this appointment. After this appointment, you must meet with the supervising officer, discuss the available resources, and following the supervising officer's directions on how to pursue the available opportunities.

5) You must continue taking all medications for the treatment of mental health conditions as prescribed by a licensed mental health treatment provider. If you were prescribed antipsychotic or psychotropic medications while in custody, you must continue taking those medications until a hearing that complies with the requirements of *U.S. v. Williams*, 356 F.3d 1045 (9th Cir. 2004), as amended by any later statutory or case law, occurs. After that hearing, you must continue taking only antipsychotic or psychotropic medications as ordered by the court.

The RRC condition is straightforward: it gets him into a stable, structured home for up to six months. From there he can work on securing appropriate housing and employment. Requiring him to engage with the Federal Defenders' social worker gives him more targeted opportunities to pursue. Mr. Arambul has a strong work ethic and is proud of the work he does. Helping him get a productive job as soon as possible is an excellent way to keep him occupied with meaningful work.

The mental health and substance abuse evaluation conditions are also straightforward. They are slightly modified to require him to act quickly on release

---

[2] This is a modified version of suggested special condition #4. *See* ECF 50 at 37 (3d Amended PSR).

from confinement. And the Federal Defenders office is willing to be involved to help facilitate getting the evaluations done quickly.

The real issue here is keeping Mr. Arambul on his prescriptions while respecting his liberty interest to be free from the unwanted administration of antipsychotic drugs. These medications have "serious, even fatal side effects"; forced administration of these drugs is "an especially grave infringement of liberty." *Williams*, 356 F.3d at 1054–55 (quoting *Harper*, 494 U.S. at 229–30). Even prisoners can't be forced to take antipsychotic medication unless there is "a finding of overriding justification and a determination of medical appropriateness." *Id.* at 1056 (quoting *Riggins v. Nevada*, 504 U.S. 127, 135 (1992)).

Before a court can order a supervisee to take antipsychotic medication, a medical professional must perform "an independent and timely evaluation of the supervisee." *Id.* The evaluation must specially focus on (1) "the type of drugs proposed," (2) the dosage the supervisee is expected to take, and (3) the expected length of time the supervisee is expected to take the drug. *Id.* The supervisee must have an opportunity to challenge the evaluation and offer medical evidence to contest the necessity of the particular drug with its particular dosage. *Id.*

An evaluation addressing Mr. Arambul's needs on supervised release can't occur now because supervision is years in the future. We don't know what his needs

will be in five years, particularly when those five years should include stabilization and treatment in BOP.

These conditions strike a reasonable balance between Mr. Arambul's liberty interest and the need to protect the public by keeping him on his medications while evaluations occur. A condition requiring him to stay on his then-currently prescribed medications—which may include antipsychotic drugs—until the evaluation occurs and a hearing is held "on a medically informed record" keeps him stable. *Id.* The independent evaluation respects his liberty interest by giving him a chance to contest the specific medication and whether its administration is medically necessary to meet the requirements of 18 U.S.C. § 3583(d)(2)—if he chooses to contest it.

Antipsychotic medications may "eliminate undesirable behaviors," which is a good thing. *Williams*, 356 F.3d at 1054. But they have serious consequences. They change a person's "cognition, concentration, behavior, and demeanor," may "impair [a person's] ability to function in particular contexts," and "can have serious, even fatal, side effects." *Id.* That's why the Ninth Circuit requires this evaluation-and-hearing process before supervisees can be ordered to take these medications against their will. Mr. Arambul understands the Court's concern that he stay on his medication after he is released from custody—even, and perhaps especially, if his medication includes antipsychotic drugs. That's why he proposes a condition requiring him to remain on his medications while the *Williams* process happens; he consents to waive

Supplemental Sentencing Memorandum
– 5 –

his rights under *Williams* in the period between release from custody and medically-informed hearing.

But he doesn't know how those medications will affect him, what his medical needs will be on release, and whether any viable alternatives to particular antipsychotic drugs will exist five years from now. The *Williams* process exists to make sure supervisees aren't forced to take potentially fatal drugs that alter his personality in significant ways when viable alternatives may exist. The release conditions must respect the *Williams* process and ultimately require that process and a court order on a medically-informed record before mandating antipsychotic medication in the long term.

### III. Conclusion

For the reasons stated above, Reily Arambul respectfully asks the Court to impose a sentence of 60 months imprisonment with judicial recommendations to the BOP, followed by three years of supervised release with the special conditions he proposes here.

Dated: January 24, 2024.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Reily William Arambul

s/Ryan M. Farrell
Ryan M. Farrell
601 West Riverside Avenue, Suite 900
Spokane, Washington 99201
t: (509) 624-7606
ryan_farrell@fd.org

### Service Certificate

I certify that on January 24, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorney Pat Cashman.

s/Ryan M. Farrell
Ryan M. Farrell
601 West Riverside Avenue, Suite 900
Spokane, Washington 99201
t: (509) 624-7606
ryan_farrell@fd.org